UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

INELL BOLLS,                         :          NO. 1:02-CV-00524
                                     :
        Plaintiff,                   :
                                     :
    v.                               :          **ORDER**
                                     :
                                     :
SOUTH-WESTERN THOMSON                :
LEARNING,                            :
                                     :
                                     :
        Defendant.                   :


        This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 18), Plaintiff's Memorandum in Opposition
(doc. 22), and Defendant's Response (doc. 24).  The Court held a
hearing in this matter on September 4, 2003.

        This case concerns allegations that Defendant racially
discriminated against Plaintiff for failure to promote her and for
discrimination in giving her lower raises than other employees.
Defendant claims that it had legitimate non-discriminatory reasons
for its actions, and therefore Plaintiff's Complaint should be
dismissed.

**I.  Background**

        Defendant is a textbook publisher headquartered in Mason,
Ohio (doc. 18).  Defendant hired Plaintiff in 1988 as a
"Developmental Editor I" to work in its publishing division on
publications designed for the office technology educational market
(Id.).  During Plaintiff's fifteen years of employment she has
reported to four different managers, all of whom, according to

Defendant, gave her evaluations stating that she "met" but never "exceeded" company expectations (Id.).

In March 1996, there was restructuring of the team on which Plaintiff worked that resulted in the change of job titles (Id.). Three people on Plaintiff's team were given the title "Project Manager," that reflected a higher level of responsibility than the new "Editor" title, that was assigned to Plaintiff and other less senior developmental editors (Id.). Defendant states that the three Project Managers had more seniority than Plaintiff, and that none of them received a pay increase in connection with the title change (Id.).

Plaintiff was dissatisfied that she had not received one of the new project manager positions, and that the restructuring forced her to move from an office to a cubicle, something that happened to another developmental editor as well (Id.). In the summer of 1996 Plaintiff complained to Human Resources (Id.).

At about the same time, Karen Schmohe became Plaintiff's supervisor (Id.). In August 1996, Plaintiff received the title "Project Manager" yet received no salary increase along with such title (Id.). Plaintiff then signaled that she desired an empty office, which Defendant states was assigned to another team (Id.). Within two months, however, Defendant states that Plaintiff received an office again (Id.). Defendant further states that Karen Schmohe's evaluations of Plaintiff tracked those of her other supervisors, in that Schmohe found that Plaintiff met but did not exceed job requirements (Id.).

2

In early 2001 further restructuring resulted in the creation of an "Acquisition Editor" ("AE") position for which Plaintiff did not apply, and that was given to Joe Vocca (<u>Id</u>.). By June 2001 Defendant decided to add three more AE positions, which it did not post, and which it filled by choosing the top performing project managers, Jane Congdon, Marilyn Hornsby, and Jane Phelan, none of whom received a pay increase (<u>Id</u>.).

Plaintiff supplements Defendant's facts as follows. She states that as early as 1993, when she was supervised by Bob First, he told her to refrain from using the honorific "Dr." on her internal and external communications (doc. 22). She found this belittling and humiliating (<u>Id</u>.). She states that First accused her of playing games when she left for the day and left the light in her office on, which she stated that she did for the cleaning crew (<u>Id</u>.).

Plaintiff states that in the March 1996 restructuring Mr. First told her that she was not promoted because she was not ready, but that First refused to tell her what she needed to do to become ready for such a promotion (<u>Id</u>.). Plaintiff states that all of her promoted peers were promoted in much less time than her, and that she met all the requirements for promotion based on her observations of her peers (<u>Id</u>.)

Plaintiff states that her pay raise in 1996 was the second lowest percentage increase among her peers, and that such lower salary increases continued every year after that (<u>Id</u>.). When Plaintiff asked her manager why she received no salary increase in

3

2000, Karen Schmohe told her that she was the "Weakest link" (Id.).
Plaintiff states that another employee was given credit for
Plaintiff's work product in Plaintiff's performance appraisal
(Id.). Plaintiff states that Schmohe attached someone else's name
to a budget Plaintiff had prepared (Id.).

Plaintiff states that she thought her 1998 appraisal was
so unfair that she wrote a four-page rebuttal (Id.). Such rebuttal
received no response from Schmohe (Id.). Similarly, Plaintiff
contested the statement in her 1999 appraisal that she was "letting
her teammates outperform her" and Schmohe offered no specifics as
to what this meant (Id.). Plaintiff disagreed with comments in her
2000 performance review, and wrote detailed rebuttals to her 2001
and 2002 reviews (Id.).

Plaintiff states that in 2002 she was not invited to
celebrate successful efforts on a project for which she claims to
have participated to the same extent as her peers (Id.). Plaintiff
states that the AE position posted in 2001 was not posted as
uniquely for her team, so that no one on her team applied for it
(Id.). Plaintiff states that the person named to the AE position,
Joe Vocca, was assigned to the area that was her major strength,
and that Vocca had no experience in the area and a history of
performance problems (Id.).

Plaintiff states that the final "reorganization," under
which she was passed over for a position, upset her to the point
where her doctor placed her on two weeks medical leave, prescribed
high blood pressure medication, and medication for depression

4

(<u>Id</u>.).  She also consulted briefly with a psychologist (    <u>Id</u>.).

On June 29, 2001, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"), claiming that Defendant discriminated against her based on her race when it failed to give her the AE position for which she did not apply, nor any of the three AE positions created in June 2001 (<u>Id</u>.).  In April of 2002 the OCRC determined that there was no probable cause that Defendant had engaged in a discriminatory practice (<u>Id</u>.).  On June 26, 2002, Plaintiff filed a lawsuit against Defendant in the Court of Common Pleas, Hamilton County, Ohio, which Defendant removed to this Court (<u>Id</u>.).  Plaintiff's Complaint is grounded in the theories that Defendant failed to promote her or give her fair raises because of her race in violation of Ohio Revised Code Ch. 4112.02 and Ch. 4112.99, and in the theory that she was retaliated against with an unfair evaluation after she filed her discrimination charge, in violation of Ohio Revised Code Ch. 4112 (doc. 1).

## II.  Standard of Review

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

[T]he plain language of Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. Id. at 321; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Guarino, 980 F.2d at 405.

As the Supreme Court stated in Celotex, the non-moving party must "designate" specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.  Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" Guarino, 980 F.2d at 405 (quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).  Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## III.  DISCUSSION

### A.  Defendant's Motion for Summary Judgment (doc. 18).

#### 1.  Plaintiff's Failure to Promote Claim

The elements of a failure to promote claim track the McDonnell-Douglass formulation, in that Plaintiff must (1) be a member of a protected group, (2) have applied for and be qualified for the desired position, (3) be considered for and denied the position, and (4) the position must remain open after her rejection or go to a less-qualified non-protected applicant.  Farmer v. Cleveland Pub. Power, 295 F.3d 593, 603 (6th Cir. 2002) citing Roh v. Lakeshore Estates, Inc., 241 F.3d 491, 497 (6th Cir. 2001).  Once Plaintiff establishes her prima facie case, Defendant must come forward with a legitimate, nondiscriminatory reason for failing to promote the employee, which, if proffered, Plaintiff must prove is pretextual.

Defendant argues that Plaintiff has not shown as pretextual its legitimate nondiscriminatory reasons for its actions—that it placed Vocca in his position because he applied for it, and that it placed the other AE's in their positions as they

7

were more qualified than Plaintiff. Defendant further argues that the OCRC finding of no probable cause is to be accorded "substantial weight" under <u>Wren v. Gould</u>, 808 F.2d 493, 499 (6th Cir. 1987), and that it has offered unrebutted expert testimony on the issues of whether Plaintiff's pay is statistically significantly lower than her colleagues and whether its appraisal and compensation guidelines meet EEOC guidelines (doc. 18). Defendant avers that Plaintiff's claim that she was discriminated against in the June 2001 restructuring fails to meet the <u>prima facie</u> case because there was no salary increase with the title changes, and the three selected employees outranked and outperformed Plaintiff (<u>Id</u>.). Defendant argues that Plaintiff has not produced evidence that its proffered reasons were pretextual, and therefore summary judgment is appropriate (<u>Id</u>.).

Defendant further argues that Plaintiff's claim based on the AE job taken by Mr. Vocca in March 2001 fails under Ohio case law and under precedent from the Northern District of Ohio, which holds that a plaintiff cannot make a failure to promote claim when she did not apply for the job (<u>Id</u>.)(<u>citing</u> <u>Ulmer v. Dana Corp.</u>, 200 F. Supp. 2d 804, 819 (N.D. Ohio 2002).

Defendant next argues that any claim based on the 1996 restructuring that resulted in the creation of Project Managers positions is time barred under Ohio Rev. Code § 4112.02(A) (<u>Id</u>.). Defendant argues if such a claim is not time-barred, that the restructuring did not result in any pay increases (<u>Id</u>.). Defendant argues that a number of Caucasian development editors did not

8

receive Project Manager positions in the March 1996 restructuring (Id.). Under Shinholster v. Akron Auto Ass'n, Inc., 711 F. Supp. 357, 362-63 (N.D. Ohio 1989) and Wilson v. Precision Envtl. Co., No. 81932, 2003 Ohio App. LEXIS 2595 at *16-19 (Ohio Ct. App. June 5, 2003), Defendant posits, such a mixture of protected and unprotected employees subjected to adverse action undercuts a claim that such action was motivated by discriminatory animus (Id.).

Defendant argues that Plaintiff's pay discrimination claim fails because their proffered expert, Dr. Gerald Barrett, examined Plaintiff's compensation and salary increases and concluded that there is no statistically significant difference between Plaintiff's average salary and the salary of other Project Managers between 1997 and 2002, nor any significant difference in the merit increases Plaintiff received in 1997, 2000, 2001, and 2002 (Id.). For the two years that Plaintiff received a lower increase, 1998 and 1999, such increase was explained by performance and overall salary in relation to market norms (Id.).

Finally, Defendant argues that Plaintiff's "litany of perceived slights" (including not being named "employee of the month," not being taken out to lunch with other employees, not being permitted to work from home, etc.) do not constitute race discrimination, as none of the alleged actions rise to the level of an adverse action, and all of them are justifiable by a legitimate nondiscriminatory reason (Id.). Defendant argues that "pattern and practice" claims must involve class-wide discrimination, and Plaintiff can not present evidence of any other African-American

9

employees who had applied for promotions and been denied them (<u>Id</u>.).  Defendant further argues that Plaintiff conceded that she had never experienced any kind of racial harassment, nor had been subjected to even a "racially insensitive" remark (<u>Id</u>.).

### 2.  Plaintiff's Retaliation Claim

In Count II of her Complaint, Plaintiff alleges that Defendant has retaliated against her since June 2001 when she filed her charge of discrimination (<u>Id</u>.).  Plaintiff alleges that she got a 2.53% merit increase rather than what she alleges is the "average" increase of 3% (<u>Id</u>.).  She also alleges that she was not invited to lunch by her supervisor when other Project Managers were taken out, and that her performance appraisals had been written in a "way" to indicate that she was being retaliated against (<u>Id</u>.).

Defendant argues that Plaintiff fails to show she suffered an adverse employment action as her allegations do not rise to the level of materially adverse sufficient to state a <u>prima facie</u> case of discrimination (<u>Id</u>.).  Second, Defendant argues, there were legitimate nondiscriminatory reasons that she received the 2.53% increase and she was not invited to lunch with others (<u>Id</u>.).  Her merit increase was found proper by Dr. Barrett, Defendant argues, and she was not invited to lunch because she was not working on the same project completed by the others (<u>Id</u>.).  Her performance evaluation, claims Defendant, was consistent with all of her evaluations she received from her three earlier supervisors (<u>Id</u>.).  Consequently, Defendant argues that Plaintiff's retaliation claim should be dismissed (<u>Id</u>.).

10

**B.  Plaintiff's Memorandum in Opposition (doc. 22)**

  **1.  Plaintiff Claims She Has a <u>Prima Facie</u> Case**

Plaintiff argues that she can present sufficient evidence on each element of her <u>prima facie</u> case to survive summary judgment.  Plaintiff states the only arguments that Defendant raises with respect to her <u>prima facie</u> case are 1) the AE position did not constitute a promotion for Plaintiff, and 2) Plaintiff did not apply for the one AE position that had been posted.

Plaintiff argues that there are issues of fact as to whether the AE position constituted a promotion.  Though Defendant claims there was no pay increase associated with the title, Plaintiff argues that the job assignments were made at the same time as the merit increases for 2001, and the three newly-named AE's received higher increases than Plaintiff did.  Plaintiff argues that a salary increase is not necessarily dispositive of whether the new position constituted a promotion because the salary range for the position is higher, and the position has more responsibility.

Second, Plaintiff argues that as there was no notice of the three AE positions, she does not have to establish that she applied for such position. As for the position given to Mr. Vocca, which was posted, however, she states that she did not apply because she did not know the extent of the reorganization being planned.  Plaintiff argues that it was not made clear the extent of the changes which would result in an AE being devoted to post-secondary office technology products, the products for which she

11

was the content expert.

Plaintiff argues that three of her peers obtained the AE position without applying, and that Vocca gained the position for which she would have been the most qualified.  She argues that a jury could conclude that Defendant manipulated the decision to foreclose her from the promotion.

### 2. Plaintiff Argues that Defendant's Reason for Not Promoting Her was Pretextual

Plaintiff argues under <u>Manzer v. Diamond Shamrock Chemicals, Co.</u>, 29 F.3d 1078, 1084 (6th Cir. 1994), she can show that Defendant's proffered reasons for failing to promote her are pretextual by showing that such reasons (1) had no basis in fact, (2) did not actually motivate the decision, or (3) were insufficient to motivate the decision.

Plaintiff argues that Defendant's proffered reason that the three chosen AE's had more seniority is irrelevant because the decision-makers did not indicate that seniority had anything to do with their decisions.  She further argues that only one of the AE's was a content expert, contrary to Defendant's assertion.  Plaintiff argues that as she was an experienced Project Manager who was a content expert, and that she was overlooked in favor of those who were not content experts, a jury could find that the articulated reasons for choosing others is a pretext for race discrimination.

Plaintiff argues that further evidence of race discrimination is found in Schmoe's treatment of her for years, in giving her lower salary increases than her peers, in refusing to

consider moving her to an office, in excluding her from a lunch, in unfairly writing Plaintiff's performance appraisals, in failing to recognize Plaintiff's work, in refusing to allow Plaintiff to work from home, and in giving credit to others for Plaintiff's work.

Finally, Plaintiff argues that Defendant does not have a good track record for promoting African Americans, as evidenced by the fact that only 1.8% of Defendant's Officials and Managers are African-American, only 5.5% of its Professionals are African-American, while 17.9% of its lowest-level employees (Office and Clerical) are African-American.

Plaintiff argues that the determination of the EEOC and the OCRC is within the discretion of the Court, but that it would be improper to find that the OCRC was correct in its determination without any review of the evidence the OCRC had before it. Plaintiff also argues that by separate motion she has moved to strike the report of Defendant's expert Dr. Barrett, that his opinions are irrelevant, and at least one opinion is inadmissible. Plaintiff argues that Defendant has not established the qualifications of its expert or the admissibility of his opinions, so that such unrebutted opinions are not properly considered at the summary judgment stage.

### 3. Plaintiff's Pay Raise Discrimination Claim

Plaintiff argues that there are questions of fact precluding the grant of summary judgment on her pay raise claim. She argues that a comparison of performance evaluations shows that Plaintiff's performance in contrast to those promoted indicates she

was the only one who did not earn a "not achieved" on any of her goals.  Therefore, she argues, salary increases were not based on success in meeting goals, as indicated by Defendant.

Plaintiff further argues that she and two of those promoted to AE had salaries just above market norms, so that this factor does not explain the difference in percentage of raise as compared to them.  Plaintiff argues that because salary decisions were so skewed against Plaintiff, a jury could conclude that all decisions made between 1997 and 2002 were influenced by race discrimination.

### 4.  Plaintiff's Retaliation Claim

Plaintiff argues that any action that affects an employee's pay or benefits is considered material, citing <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir. 1999).  She argues therefore that her appraisal that followed her filing of her charge was full of unfair comments, resulting in a "Low Meets" evaluation and a reduced raise from 3% to 2.53%, was material and is actionable.

Plaintiff argues that she can establish that Defendant's reasons for its action of retaliation are pretextual because her performance was very good, and there was no reason for a poor evaluation.

### C.  Defendant's Reply in Support of Its Motion (doc. 24)

Defendant argues that Plaintiff's Complaint is based on her own subjective opinion that her performance was better than her peers, that her performance was unappreciated, that her supervisor

14

was hostile, but that she has made no link to her race (doc. 24). Defendant argues that Plaintiff's performance has simply been average (<u>Id</u>.). Defendant argues that the rate of increase of the salaries of Caucasian workers has similarly increased at a smaller rate as their salaries exceeded market norms (<u>Id</u>.). Defendant argues that the overall performance of the other employees was better than Plaintiff (<u>Id</u>.). In the employee handbook, Defendant argues, the policy is stated clearly that positions will not necessarily be posted in the event of restructuring (<u>Id</u>.).

Defendant argues that Plaintiff has presented no evidence to show that its reasons for not selecting her for an AE job were pretextual (<u>Id</u>.). It argues that Plaintiff's argument that "seniority" was not considered in such decision lacks merit because none of the decision-makers were directly asked if they considered seniority, but rather they indicated that they looked at the overall background and performance when making the decision of who to choose (<u>Id</u>.).

Defendant challenges the validity of Plaintiff's workforce statistics, arguing that she failed to make any connection between such numbers and any testimony about their meaning in terms of the Company's compliance with the anti-discrimination laws (<u>Id</u>.). Defendant argues that in 2002, the Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") evaluated Defendant's equal employment policies and practices and found no apparent violations of the equal employment laws (<u>Id</u>.). Defendant further argues that Plaintiff's

15

efforts to argue about a "pattern and practice" of discrimination while concurrently trying to exclude the testimony of Dr. Barrett should be rejected ( <u>Id</u>.).  Defendant argues that its expert's opinion is relevant, admissible, and should not be excluded (<u>Id</u>.).

Defendant further argues that the "no probable cause" determination" of the Ohio Civil Rights Commission is entitled to great deference (<u>Id</u>.).  Defendant argues that Plaintiff misreads <u>Cooper v. Philip Morris, Inc.</u>, 464 F.2d 9 (6th Cir. 1972) for the proposition that such finding is inadmissible at the summary judgment stage (<u>Id</u>.).  <u>Cooper</u>, argues Defendant, merely held that the granting of summary judgment based solely upon such a determination was erroneous (<u>Id</u>.).

Finally, Defendant argues that Plaintiff's retaliation claim fails because the alleged employment action must be "materially adverse" under <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir. 1999) (<u>Id</u>.).  Defendant argues first that there was no "downgrading" of Plaintiff's raise from 3% to 2.5%, but that the 3% Plaintiff refers to is a "first pass" default number on a spreadsheet given to the manager based on funds available for raises, and the manager then makes a final determination as to the percentage of increase based on performance (<u>Id</u>.).  Defendant argues that employees whom Plaintiff claims were treated more favorably also received a lower raise than that of their "first pass" default number (<u>Id</u>.).

**D. Analysis**

As stated at the September 4, 2003 hearing, the Court

will not consider the OCRC Report in this instance as it
constitutes hearsay.  This report aside, the Court finds however
that Defendant's arguments in this case are well-taken, and that
Plaintiff has not been subject of race discrimination or
retaliation.

Plaintiff's claims that are not barred by the statute of
limitations[1] are those stemming from her unhappiness with Mr.
Vocca's assumption of a position for which she did not apply, the
subsequent restructuring that changed the titles of Ms. Phelan,
Congdon, and Hornsby, and alleged pay discrimination.  The Court
also considers Plaintiff's retaliation claim.

The Court does not find evidence in this case that
Defendant intentionally misled Plaintiff so as to keep her from
applying for Vocca's position, and then stealthily restructured
positions so as to exclude Plaintiff from an AE position.
Plaintiff argues that two of the three named AE after Mr. Vocca
were not content experts in their assigned areas, and that she had
more content expertise in her area than Vocca.  However, Plaintiff
does not show that she was more qualified than those two in the
areas to which they were assigned, and concedes that the third was
indeed a content expert in the assigned area.   Plaintiff merely

---

[1] The Court finds well-taken Defendant's argument that a six-
year statute of limitations applies to the claims asserted by
Plaintiff, and as such, the Court cannot reach her claims rooted
in events taking place before June 26, 1996.  As Plaintiff's
initial claims focus on a March 12, 1996 restructuring, such
claims are out of reach.  Ohio Revised Code Sec. 2305.07,
Cosgrove v. Williamsburg of Cincinnati Mgmt. Co., 638 N.E.2d 991,
997 (Ohio 1994).

17

reiterates that, in her opinion, she should have had Vocca's position. As Plaintiff did not apply for Vocca's position, as there is no evidence that Defendant intentionally kept Vocca's position out of Plaintiff's reach, and further no evidence that Plaintiff was more qualified than those other individuals named AE, Plaintiff's claim is not well-taken.

Having reviewed the record, the Court finds that Defendant has a goals-focused performance evaluation system that does not reflect racial bias. Performance evaluation can be subjective to a degree, but a number of different supervisors repeatedly evaluated Plaintiff in the same fashion, as average, and the system is tied to clearly defined objectives rather than mere personal judgments. Abrams v. Millikin & Fitton Law Firm, 267 F. Supp. 2d 868 (S.D. Ohio 2003)(this Court found significant the fact that performance evaluations were consistent and not just one person's opinion). Plaintiff's evaluations do not smack of arbitrariness, but rather contain remarks that both congratulate and critique her work product. Plaintiff signed her 1997 review stating she supported it. She challenged her later evaluations with her opinion that she was rated unfairly. However, the Court has reviewed Plaintiff's evaluations, as well as the findings of Defendant's industrial psychologist[2], and concludes that such

---

[2] Plaintiff filed a Motion to Strike Dr. Barrett's expert report (doc. 21), which Defendant opposed (doc. 25). The Court finds that such report is not dispositive in this matter, while also finding that unrebutted expert testimony can be considered at the summary judgment stage. Taylor v. Medtronics, Inc., 861 F.2d 980, 987-88 (6th Cir. 1988). The Court finds that

evaluations do not indicate that she was treated unfairly in relation to other employees.

Defendant had a legitimate non-discriminatory reason for placing Mr. Vocca in his position, as he applied for it. Plaintiff cannot claim she was discriminated against in not being promoted to Vocca's position because she did not apply for it. <u>Farmer v. Cleveland Pub. Power</u>, 295 F.3d 593, 603 (6th Cir. 2002) <u>citing</u> <u>Roh v. Lakeshore Estates, Inc.</u>, 241 F.3d 491, 497 (6th Cir. 2001); <u>Ulmer v. Dana Corp.</u>, 200 F. Supp. 2d 804, 819 (N.D. Ohio 2002).

Defendant further had a legitimate nondiscriminatory reason for placing Ms. Congden, Hornsby, and Phelan in their positions. The record shows that these individuals had stronger evaluations and were more qualified for their respective AE positions than Plaintiff, based on their performance, expertise in their respective areas, and their longer tenure with the company. The record shows that Defendant looked at the overall background and performance of the individuals when making the decision of who to choose for the positions. Such considerations are valid.

Plaintiff's arguments concerning pay raise discrimination do not add up. Plaintiff attempts to compare the number of goals she met to the different goals met or not met by her colleagues,

---

Defendant has established that its expert is qualified to opine on statistical comparisons of Plaintiff's salary and raises. Accordingly, the Court considers such relevant portion of Dr. Barrett's report in its analysis.

stating that she was the only one who did not earn a "not achieved" on any of her goals. However, the Court has reviewed the record and notes that the comparison of such different goals proves little, as they are not equivalent. Overall ratings can be compared, and it is clear that Plaintiff's overall ratings were not as strong as those of her colleagues. When her evaluation stated that she was letting her teammates outperform her, it stated that her medical product needed extensive rework, and that she deferred issues. In contrast, her teammate Jane Congdon earned remarks that she provided high quality work quickly; Marilyn Hornsby was commended for producing good quality work and for working extremely hard; and Jane Phelan was noted for heroic efforts in the face of a very heavy work-load.

Plaintiff argues that salary decisions were skewed against her, while admitting that her salary was above market norms. Such a position is inherently weak within the factual context of this case. Additionally, Defendant proffers evidence from an industrial expert that Plaintiff did not challenge, showing her compensation and salary increases did not statistically differ from those of her colleagues, and that there was a high correlation between performance and percent increases for Project Managers. The Court does not find a genuine issue of material fact as to Plaintiff's unfair compensation claim.

Finally, Plaintiff clearly misreads Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999) for the proposition that any action that affects an employee's pay or benefits is considered

material.    Plaintiff's retaliation claim is based on the theory
that an appraisal following the filing of her discrimination charge
was full of unfair comments that resulted in a reduced rate of pay
raise, that is, a raise of 2.53% as opposed to 3%.  The Court finds
Defendant's explanation of its "first pass" default number
persuasive, and finds persuasive Dr. Barrett's finding that there
is not a statistically significant difference in Plaintiff's
increase as opposed to that of her fellow Project Managers.  The
Court therefore does not need to reach the question of whether such
reduced rate of pay raise is material.  There is no genuine issue
of material fact to be resolved as to Plaintiff's retaliation
claim, and Defendant is entitled to judgment as a matter of law on
Count II of Plaintiff's Complaint.

## IV.  Conclusion

Having reviewed this matter, and having heard the parties
at the September 4, 2003 hearing, the Court concludes that there is
no genuine issue of material fact as to Plaintiff's claims and that
Defendant is entitled to judgment as a matter of law.  Plaintiff's
claim based on a failure of promotion is not well-taken as she did
not apply for the position that she ultimately desired, that of Joe
Vocca, and she has not shown herself more qualified than Jane
Congdon, Jane Phelan, or Marilyn Hornsby, who assumed the three AE
positions created by restructuring.  Plaintiff's claim that she was
denied fair raises similarly fails, as in the overall picture her
salary was above market rate, and she has not successfully
challenged the findings of Defendant's proffered expert to the

contrary.  Finally, Plaintiff's retaliation claim fails as she has not shown that Defendant took an adverse action against her, nor a causal connection between such alleged action and her protected activity.

Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment (doc. 18), and DISMISSES this case.  The Court similarly DENIES Plaintiff's Motion to Strike the Expert Testimony of Dr. Gerald Barrett (doc. 21) as to his statistical findings, the only portion of such report considered by the Court in reaching its decision.  The balance of such Motion is rendered moot by this Order.

SO ORDERED.

Dated: November 4, 2003        /s/ S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge